# SUPERIOR COURT
#### OF THE
## STATE OF DELAWARE

RICHARD R. COOCH
*RESIDENT JUDGE*

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0664

Francis J. Murphy, Esquire
Lauren A. Cirrinicione, Esquire
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, Delaware 19805
Attorneys for Plaintiff

Bradley J. Goewert, Esquire
Thomas J. Marcoz, Esquire
Marshall Dennehey Warner Coleman & Goggin
1007 North Orange Street, Suite 600
P.O. Box 8888
Wilmington, Delaware 19899
Attorneys for Defendants

> **RE:** ***Heather E. Turner v. Delaware Surgical Group, P.A., Eric D.***
> ***Kalish, M.D., and Michael K. Conway, M.D.***
> **C.A. No. 09C-07-219 RRC**
>
> Submitted: February 11, 2016[1]
> Decided: May 9, 2016
>
> On Plaintiff's Motion *in Limine* to Admit Evidence of the CCHS
> 24-Hour Rule for the Purposes of Impeachment.
> **DENIED**.
>
> On Defendants' Unopposed Motion to Preclude Wesley
> Clayton, M.D. From Offering Expert Opinions.
> **GRANTED**.

---

[1] This is the date of receipt in chambers of the transcript of the November 20, 2015 oral argument.

Dear Counsel:

This letter addresses the two motions *in limine* on which the Court reserved decision at the November 20, 2015 oral argument. In 2008, after two laparoscopic surgeries performed by Defendants Dr. Kalish and Dr. Conway, Plaintiff experienced abdominal pain and a mass was discovered on her liver. That mass was removed by Dr. Joseph Bennett, who then sent a letter to Plaintiff's gastroenterologist stating that the mass "raised the concern about something that spilled out from prior surgeries." On January 10, 2012, Plaintiff underwent a final surgery to repair a large ventral incisional hernia that was allegedly caused by the two previous laparoscopic procedures. Plaintiff filed an action in this Court and the case was tried in June 2012.

The jury returned a defense verdict and Plaintiff was not awarded any damages. Plaintiff appealed the jury's verdict to the Delaware Supreme Court which reversed the verdict for the unrelated reason that this Court allowed expert testimony from Defendant Dr. Kalish when the defense had never provided an expert report and had not disclosed that expert opinion during the pretrial deposition. It remanded the case for this Court to consider whether the so-called "24-hour rule" (*see infra*) should have been admissible for impeachment. The Supreme Court found that this Court properly excluded evidence of the 24-hour rule for the purpose showing affirmative proof of negligence. However, it instructed this Court to determine whether evidence of the 24-hour rule should be admitted for the purpose of impeachment of Defendant Dr. Conway.

However, since the Supreme Court's remand, additional discovery has been taken and the facts of the case surrounding the 24-hour rule have changed. During the first trial the parties agreed that Christiana Care had in place a rule that required the surgeons to dictate a post-operative report within 24 hours of the procedure. Now, as a result of further discovery, it is disputed by the parties whether any such "rule" actually existed. This report is intended to contain the doctor's findings and to explain the procedure that was performed. This dictated report is more detailed than the handwritten post-operative note that is filled out on a preprinted hospital form. Defendant Dr. Conway did not dictate his post-operative report until 52 days after the surgery. Dr. Conway also performed at least 27 other surgeries during those 52 days. This dictated report was the source of the opinions and testimony of Dr. Conway, as well as of Dr. Kirkland (defense liability expert), of Dr. Beaton

(plaintiff's liability expert), and of Dr. Bennett (treating physician).[2] Plaintiff has filed a motion *in limine* to admit evidence that Christina Care had a 24-hour rule in place for the purpose of impeaching those four witnesss' testimony.

Plaintiff contends that the credibility of Dr. Conway needs to be called into question using evidence of the 24-hour rule for three reasons: (1) he denied in his deposition that his recollection would have been better if the dictated post-operative report was completed closer to the time of the surgery; (2) he denied the existence of the rule; and (3) to show the bias of Dr. Kalish, who has been practicing with Dr. Conway for about 21 years.

This Court's determination of whether impeachment evidence is admissible is governed by the Delaware Supreme Court's decision in *Snowden v. State*.[3] *Snowden* states that this Court must consider: "(1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question of bias; (3) the danger of unfair prejudice, confusion of issues, and undue delay; and (4) whether the evidence of bias is cumulative."

The first factor weighs in favor of allowing evidence of the 24-hour rule for impeachment purposes. Dr. Conway is a defendant in this matter and it is his dictated post-operative report that was completed 52 days following Plaintiff's procedure. Defendant Dr. Conway denies knowledge of any such rule. Also, Drs. Kirkland, Bennett, and Beaton relied on this dictated post-operative report to form their opinions. Therefore, it is likely that the testimony of Dr. Conway will be crucial to his defense.

However, under the second *Snowden* factor, the logical relevance of the specific impeachment evidence to the question of bias, weighs in favor of excluding specific evidence of the 24-hour rule for impeachment purposes. The existence of a 24-hour rule instituted by Christina Care is only logically relevant to Dr. Conway's testimony that no such rule exists. The existence of the rule does not itself show any bias of Drs. Kalish, Beaton, and Bennett.

---

[2] The Court notes that the Supreme Court stated that the only person to possibly be impeached by the 24-hour rule is Dr. Conway. *Turner v. Delaware Surgical Grp.*, 67 A.2d 426, 437 (Del. 2013) ("The parties may again litigate the admissibility of the 24–hour rule for the purpose of impeaching Dr. Conway's credibility, after a balancing of the factors set forth in *Snowden v. State*.").

[3] 672 A.2d 1017 (Del. 1996).

The third *Snowden* factor, and the most important under these facts, weighs heavily in favor of denial of the Motion *in Limine*. If Plaintiff is permitted to introduce evidence of a 24-hour rule, it is quite probable that the jury will be confused by the issues and that undue delay will result. Most of this danger stems from the recent deposition testimony of Stefanie Brumberg, Christiana Care's 30(b)(6) witness. Defendants concede that "[w]hen this case was initially litigated, and even through the subsequent remand by the Delaware [Supreme] Court for further consideration of the issue, the parties only has some policies and procedure[s] from Christiana Care, without a true understanding of the purposes and intent of those policies."[4] So while the issue was not raised in the first trial, Defendants now claim that the dictated post-operative report does not have to be completed within 24 hours of the procedure.[5] In support of this position, Defendants offer Ms. Brumberg's July 15, 2015 deposition testimony in which she stated:

> Q. It says, "The operative note should be dictated before the patient goes to another level of care (e.g. PACU) and preferably within 24 hours of the surgery." Do you see that?
>
> A. **I do.**
>
> Q. The sentence is referring to the dictated operative note, correct?
>
> A. **It's incorrect, actually. So the expectation is that the handwritten operative note is entered into the record within 24 hours immediately after surgery[;] actually prior to the patient being transferred to the PACU. The requirement about [] the dictation is a different requirement. So what is here in the operating room rules, they are using the term "dictated" incorrectly. And that actually coincides with the Joint Commission['s] regulations and requirements. What**

---

[4] Resp. of Defs. To Pl's. Mot. *In Limine* to Admit Evidence of the CCHS 24-Hour Rule for the Purpose of Impeachment, at 1 (Aug. 25, 2015).

[5] Plaintiff filed a Reply to Defendants' Response in which Defendants asserted that there was no 24-hour rule in place for a dictated post-operative report. In that Reply, Plaintiff stated that "[i]n order to resolve this matter, Plaintiff respectfully submits that the Court will have to read the entire deposition [of Ms. Brumberg] and review the deposition exhibits." Plaintiff did not direct the Court to what Plaintiff believes are the most pertinent parts of the 80-page deposition. Nor did Plaintiff make any request to exceed page limits. Therefore, this Court will not read the entire deposition and guess at which testimony Plaintiff thinks is important.

4

that states [is] that the operative noting is to be entered into the record immediately when the dictated report is not going to be able—is not going to be entered immediately after surgery, before the patient is transferred to the next level of care. . . .

A. So I understand what you're reading in the rule; however, it is not truly what is—what has been expected of the physicians. So that is—that is what's in the operating room rules, you're absolutely correct. It's just not what the physicians are really expected to do.

Q. So the physicians were not expected to do what is in the actual rule?

A. No. I'm sorry, but no.[6] . . .

Q. And is this the type of operative report that the operative note rule says "should be dictated before the patient goes to another level of care (e.g. PACU) and preferably within 24 hours of surgery"?

A. No. I think the problem and the challenge is that the operating room rule is referring to the operative note. The dictated document is referred to as the operative report. They are not one and the same. So the [handwritten] operative note is what is to be entered in the record immediately after surgery. The dictated operative report, we were asking for it to preferably be done within 24 hours after surgery is done. But terminology is not—I think is causing this confusion.[7] . .

Q. You're saying that this rule that you provided to us that you say was in effect from 1996 to 2015 that says, "The operative note should be dictated before the patient goes to another level of care and preferably within 24 hours of surgery" . . . it's not correct?

A. It's not worded properly. No, it's not.[8] . . .

---

[6] Dep. Tr. of Stefanie Brumberg, at 20–24.
[7] *Id.* at 39–40.
[8] *Id.* at 41.

5

Q.   It is your understanding that one of the statistics that the Joint Commission is looking to when they come to evaluate Christiana Care, among others, would be the percentage of operative reports dictated within 24 hours?

A.   **No.   Their expectation is that our records are completed, at least 50 percent of them, within 30 days of patient discharge.   Their requirement is that the [handwritten] operative note is entered immediately in the records before the patient is transferred to the next level of care, but they do not define requirements on how timey the dictated operative report needs to be completed.**[9]

The record is unclear as to what degree Ms. Brumberg was prepared for her 30(b)(6) deposition.  Ms. Brumberg testified that the rule that says the dictated operative note should be completed within 24 hours of the surgery, but that is not the policy that is actually expected of the doctors. Ms. Brumberg then stated that "the operative noting is to be entered into the record immediately when the dictated report is not going to be able—is not going to be entered immediately after surgery."  She then testifies that the dictated post-operative note should preferably be completed within 24 hours of the surgery.  These inconsistencies in her testimony will likely cause the jury confusion and distract from the issues of liability.

The probability that allowing the 24-hour rule to be introduced for impeachment purposes would distract from the core issues of liability in the upcoming second trial was further highlighted by Plaintiff's counsel during oral argument on this Motion *in Limine*.  Plaintiff's counsel stated:

I can't believe as a Delaware lawyer I've been confronted with this entire can of worms.  So I ask a surgeon is there a rule at the hospital?  He says, ["]No, there's no such rule.["]  I ask two other surgeons [who] operate, two of the other four surgeons [who] operated on her is there a rule? ["]Yes, there is.["][10]

Given the dispute of whether a "24-hour rule" actually existed, or what it meant, its admission for impeachment purposes will likely cause the jury to confuse the issue that must be decided and cause an undue delay because the jury

---

[9] *Id.* at 51–52.
[10] Tr. of oral argument at 14 (Nov. 20, 2015).

6

would first have to decide whether the rule actually existed at the time and then use that determination in assessing Dr. Conway's credibility.[11]

Further buttressing this Court's decision not to allow evidence of the 24-hour rule for impeachment of Dr. Conway is Plaintiff's unusual and alternative request for an "evidentiary hearing to determine the true facts concerning the CCHS requirements for post-surgery documentation."[12] Plaintiff and Defendants took discovery on this issue. It has been briefed by both parties and the Court held oral argument. An open-ended "evidentiary hearing" on this issue presided over by this Court is not the procedural vehicle for this Court to determine (if it even can) the nature of existence of the 24-hour rule at CCHS as it may have existed in 2007–2008.

The United States Court of Appeals for the Third Circuit addressed a procedurally similar but factually different issue under a Federal Rule of Evidence 403 analysis in *Langer v. Monarch Life Insurance Company*.[13] The court in *Langer* held that the district court did not abuse its discretion in excluding evidence of a prior settlement agreement between a plaintiff and a defendant/third-party plaintiff.[14] The appellate court affirmed the district court's decision to exclude the evidence because its introduction would have "misplaced th[e jury's] focus onto the minor subsidiary issue [of] whether the settlement was a good deal."[15]

Similarly, this Court need not reach the issue of whether Christiana Hospital is "bound" by Ms. Brumberg's deposition testimony, as Defendants assert.

---

[11] *Tilghman v. Delaware St. U.*, 2014 WL 703869, at 2–3 (Del. Super. Feb. 10, 2014) (holding that record and reports of State K-9 training had to be excluded in a dog-bite action against State defendants because: (1) the records would have likely caused undue delay and confusion of the issues for the jury; and (2) they were voluminous).

[12] Pl's. Reply in Support of their Mot. *in Limine* to Admit Evid. of the CCHS 24-Hour Rule for the Purposes of Impeachment, at* 8 (Nov. 18, 2015).

[13] 966 F.2d 786 (3d Cir. 1992).

[14] *Id.* at 799.

[15] *Id. See also* Mark S. Brodin et al., *Weinstein's Federal Evidence* § 403.05 (2d ed. 2016) ("Courts are reluctant to admit evidence that appears at first to be plausible, persuasive, conclusive, or significant if detailed rebuttal evidence, or complicated judicial instructions would be required to demonstrate that the evidence actually has little probative value."); Mark S. Brodin et al., *Weinstein's Federal Evidence* § 403.06 (2d ed. 2016) ("Although evidence may be relevant for Rule 403 to come into play, one of the reasons often expressed in these cases for excluding challenged evidence is that the evidence was so nearly irrelevant as to not be worth the expenditure of time. Courts often speak in terms of consumption of time when faced with collateral issues.").

7

However, the confusion over this issue further militates in favor of not allowing the evidence because of the confusion and undue delay that it will cause.[16]

Finally, the fourth factor of whether the evidence of bias is cumulative is neutral under these facts, as was stated by defense counsel at oral argument.[17]

In light of the Court's analysis of the *Snowden* factors, Plaintiff's Motion *in Limine* to Admit Evidence of the CCHS 24-Hour Rule is denied. While the testimony Plaintiff seeks to impeach is likely to be somewhat crucial because it is the testimony of a defendant, the other factors compel this Court to exclude evidence of the rule. However, it is important to note that this ruling does not preclude the jury from hearing that Dr. Conway completed the dictated post-operative report 52 days following the surgery. The jury may then draw its own conclusion about the accuracy of the report and the credibility of Dr. Conway's testimony.

Defendants also filed a related Motion to Exclude Dr. Wesley Clayton From Offering Expert Opinions of the Timing of Dictated Operative Reports. Since the Court has already ruled that evidence of the 24-hour rule is inadmissible under *Snowden*, it follows that any testimony from Dr. Clayton about the timing of those operative reports would also be precluded.

Therefore, Plaintiff's Motion *in Limine* to Admit Evidence of the CCHS 24-Hour Rule for the Purposes of Impeachment is **DENIED** and Defendants' Motion to Preclude Wesley Clayton, M.D. From Offering Expert Opinions is **GRANTED**.

---

[16] For a discussion on this issue *see generally* James C. Winton, *Corporate Representative Depositions Revisited*, 65 Baylor L. Rev. 938 (2013).
[17] Tr. at 40.

**IT IS SO ORDERED.**

Very truly yours,

Richard R. Cooch

RRC/jmf
cc:    Prothonotary

9